Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eleventh Circuit is now open according to law. God save the United States and His Honorable Courage. Good morning and welcome to the last day of our panel sitting. Judge Rosenbaum, Judge Newsom and I are happy to have you with us even though our meeting is only virtual. We had to obviously do that because of Hurricane Ian and you know we're thinking of all the people who were so terribly affected by that storm. We hope all of you are well. We have two cases this morning. Our first case is number 21-12573, United States v. Colum Moran. Ms. Fussell. Good morning, Your Honors, and please the court. This is a case about the vast difference between a wholesome blog by making offensive comments and attempting to produce child pornography. A lewd comment made on a public post on a parenting blog is scary and disturbing. It may well cause emotional distress and rise to the level of criminal conduct, but no rational fact finder could conclude beyond a reasonable doubt that the vulgar comments here were actual attempts at producing visual depictions of children engaging in sexually explicit conduct. In particular, there was insufficient evidence to support a jury finding that 1. Mr. Moran had the requisite intent to produce CP, 2. that he took a substantial step toward producing, and 3. that he knew or had reason to know that the bloggers would transmit child pornography over the internet. The reason why is the parenting blog forum. These mom blogs relied on corporate sponsorships of their posts and the blogs gave parenting tips and advice and had he not targeted mom blogs specifically and instead posted the same content on Craigslist or in an unwholesome forum, the context could plausibly support the inference that he was attempting to entice a person to create child pornography at his direction, but no reason. So this is Judge Newsom. So I mean, it seems like one can intend or, you know, attempt to do all if one seeks, if one seeks to buy heroin from a priest, do we necessarily say, so inconceivable that it couldn't possibly have been a legitimate attempt? No, Your Honor. No, we don't say that it's so inconceivable that it could not have been a legitimate attempt. However, that's not the standard here, whether or not it's conceivable. The standard here is whether or not it was proven beyond a reasonable doubt to the jury. And while the court does look at the evidence in the light most favorable to the government, only reasonable inferences can be drawn. It can't be the case that just because something's conceivable or theoretically possible that we consider it proven, proof sufficient to convict someone of the crime. Well, but I guess I thought your theory here was in effect that it was so just not going to happen that the evidence was necessarily insufficient. And so I'm wondering why that's any different from my heroin from a priest example. Yes, Your Honor. So that is our position that it's inconceivable that this could happen. And, you know, if we were talking about a situation where a person was trying to buy heroin from a priest and the sole evidence was they asked that priest for heroin and at a public time, for example, in the middle of mass, they stand up and ask the priest to buy heroin, then our position is no, that absolutely would not be sufficient evidence to convict that person of attempting to purchase heroin. Because it's clear that that's not going to result in the purchase of it. But even setting the matter of intent aside, there are other elements at play here. So in addition to the fact that no rational juror could find evidence of the requisite intent, that Mr. Moran intended consequences of his actions that were neither natural nor probable, no reasonable juror could find that his objective acts, that is his comments, unequivocally marked his conduct as criminal under 2251A and thus no reasonable jury could find that they were a substantial step towards the production of child pornography. I don't quite understand that because I mean, what we're talking about here is an attempt. All it required was for the counterparty to say yes. I mean, like what more could possibly be required? Why isn't that a substantial step? I just don't quite understand that. I mean, it's a transaction, you know, sort of he tries if the other side accepts, then there's a successful crime. I don't really understand what more the substantial step would need to be. Yes. So substantial step isn't just that if you take an action that that action could theoretically be the but for cause of, you know, the production of child pornography. That's not enough. That's not even really enough for like civil liability. It's says that in that the objective acts must mark the conduct as criminal without reliance on the accompanying mens rea. And as the jury was instructed, it must be an act which in the ordinary, in the ordinary course of things, or as the current jury instructions say, would normally result in the production of child pornography. So it has to be something that would typically result in the completed crime. It can't just be that it's theoretically possible for the production of child pornography to to result from his comments. Your position, Ms. Fussell is that here the messages of enticement in and of themselves did not constitute that substantial step. Yes, Your Honor, that's correct. And that's because of the context and the circumstances. So it would not be our position that words like these could never constitute an attempt. If they were made under in the context where the they're, they're being they're being made would normally result in the completion of the crime, you know, based on the objective facts, setting and intent and mens rea aside. For example, if they were made in a Craigslist type forum, if they were made, you know, in a private message on, you know, back page or something like that, then of course, that these would constitute an attempt. But here, these comments are only being made in a forum that there's simply no plausible way that this would have resulted in the attempted production of child pornography. And particularly because the comments are so over the top, so graphic, compared with the forum, it's clear that that's not what's going to happen. So one quick question about substantial step before you pivot off of that, do you? Well, maybe you don't concede, but tell me why we're not reviewing your substantial step argument for plain error. Yes, Your Honor. So um, so first, under United States versus Massey, the court is supposed to look at the context of the whole record in determining whether it was preserved. But here, the court doesn't even really need to do that, because it was very clearly, the argument was very clearly made below. And I can give Your Honor the record sites for that. So at document 171, at pages 71 through 72, defense counsel contended that there was insufficient evidence of intent, and then argues that in addition to that, because there was no communication between the bloggers and Mr. Moran beyond the post itself, there could be no attempt. Defense counsel also stated at page 72, that this is not a situation where any communication being made will result in anything being placed on her site, which is clearly referring to the substantial step element. Only after that does defense counsel use a transitional phrase to indicate he's moving on to the reason to know of transmission element. When the government responded to the arguments, it specifically addressed substantial step, because defense counsel had, and that's document 171 at 116. And in ruling on the motion for the JOA, the court addressed substantial step in more detail than intent, and that's document 171 at 133 to 135. So this was clearly argued below. And, but even if it even if it wasn't expressly addressed, United States versus Massey tells us plain air review isn't appropriate, when a review of the record in its entirety shows that it was adequately presented to the district court, and it certainly was here. But Your Honor, even if we were on plain air review, this is such a dramatic circumstances that it could even, that it could even clear that hurdle. Because here, you know, as the government argued to the jury, the comments must have been horrifying, you know, causing emotional distress would certainly be the normal production of child pornography would not be and particularly in light of this court's recent decision in United States versus Lee, you know, the arranging of the production of child pornography is really what the crime has to has to be. So here, you know, there's simply no rational, no way a rational fact finder can conclude that that's what happened. And the notion that Mr. words were an attempt to produce is so absurd that even the government has not been able to conjure up a plausible hypothesis. The government argued to the jury below that Mr. Rand was attempting to entice the mothers to take in post, or that there was some innocent mom blogger, you know, that might have tried to do it to be helpful. And even now in the response, in the response and on appeal, the government describes that as implausible. So it's clear that even the government doesn't have, you know, a plausible theory as to how this would have occurred. No rational trier of fact could have found the essential elements of some attempted child pornography beyond a reasonable doubt. Only an absurd construction of the evidence could have led to such a finding. Accordingly, Mr. Moran respectfully request that this court vacate his convictions for attempted production. Thank you. Thank you very much, Mr. Sun. Ms. Sweeney. Good morning, Your Honors, counsel, Sarah Sweeney, on behalf of the United States. I think that what is important, one of the important things here is, yes, we do have to deal with rational fact finders and rational inferences. But we put juries in the position, we tell them, we need you, juror, to put yourself in the shoes of someone like Mr. Moran. And that is one of the hard things that I think that we, the government and prosecutors, ask juries to do. So there's no question that what he did here is just awful. I'm wondering, though, can you just sort of sum up for me, in a brief fashion, why you think there's sufficient evidence here to show that he actually intended for the mom bloggers to produce child pornography, as opposed to just being a horrible person and trolling them? Your Honor, I think that it does, it goes back to who Mr. Moran is and what we know about him from the other evidence in the case. So the first thing I would point to is the requests themselves. This court's opinion in Rothenberg recognized that these types of crimes are highly verbal. They rely on written or oral communications as their principal means of occurring. But what about the phrasing of the requests indicates that he thought that he was going to, or that he intended, for the mom bloggers to actually produce child pornography? So I would point to specific things in each post, Your Honor. In the first one, this is count one, a message to Ms. Spina when her daughter was five. Have A, take off all her clothes and take pictures of herself in the mirror. He goes on to say that, to ask for a particular pose so that we can see her vagina. The we there refers to the audience of the blog, or at the very least to Mr. Moran and the creator of the image. In count two- I'm sorry, I totally agree that it does. But how does that show? I mean, it seems so unlikely. I don't know how anybody could think that this would result in the creation of child pornography in this scenario, right? I mean, there are other scenarios where definitely, you know, we see these kinds of cases where people try to solicit parents online through Craigslist or whatever the case may be. But in the mom blogger situation with the advertisements and everything else, I'm just not understanding why anybody would think that this might result in the actual production, as opposed to just being, you know, a horrible person and, and trolling. Your Honor, we don't, we don't like I don't think that and I know you don't none of us think that that would be likely to happen. The question the jury had to answer was whether Mr. Moran thought that was likely to happen. And I think the evidence is show was was sufficient for the jury to find that he could. I want to take one detour for just a moment. I'll go back to other specific points that I think show his intent. But in this court's decision in Farley, there is an anecdote in footnote for that decision that is from Louis Free's autobiography. And it really struck me when I was preparing, it talked about one of the FBI's first investigations in the innocent images realm. And it talked about how agents would be texting or IMing with targets online, and they would say they were 16, then they would change tact and say, or an agent did this to show Louis Free how dedicated some of these defendants are to trying to have sexual contact with children, or in this case, get child pornography. One of the agents texted to one of the targets, I'm actually an FBI agent, I'm 38 years old. And the target texted back, I know you're kidding, when can we meet? You know, like he said, he was so committed to having this contact. And so I totally understand what you're saying there. But that seems a little different, right? Because he's already been in the one on one. There's not any way for the person to know whether or not he's an FBI agent that he's talking to. In this case, there's no question that Mr. Moran was talking to a mom blogger. I mean, there's just no question about that. Here's the thing, right? We have to be able to articulate in an opinion, why there was sufficient evidence for a jury reasonably to find that he intended for the production of child pornography when he wrote these horrible things to the mom bloggers. And so I'm asking you to help me with that, to tell me how I could articulate that. For someone like Mr. Moran, I think the evidence was sufficient. So we've got the we've talked about a little bit about the request themselves. And I can circle back to that if you want more detail, I would then move on to his sexual interest in children in general, and his particular sexual interest in children that matches the types of things that he was doing here. He had child pornography that referenced babies, on toilet girls, underwear, he had children's underwear in his home. And in each of the instances when he's actually requesting images from the mothers, he is asking for things that relate to his pedophilic interests as demonstrated by what he had. And to me, that also shows the connection here, he intended, he wished for these mothers to do this, he was attempting to entice them to do it. The fact that they didn't, the fact that it was horrifying to them, which they testified to, which is why the government talked about it below. That doesn't say anything about what Mr. Moran's intent was. I totally agree with that. But except the only thing that it reflects on, right, is whether a reasonable jury could find that Mr. Moran could have thought that his attempts might be successful, right, that he intended for the production. And I think what I hear you saying is that you can't really articulate anything specific, but that it's not out of the realm of possibility when we deal with a person who has the kind of interests that Mr. Moran, that the evidence shows that Mr. Moran has. But I mean, do you need an expert or something to sort of tie that in to give you that extra step of evidence to show that, you know, even when it seems like it's completely impossible and unreasonable for anybody to intend to have the production of child pornography under these kinds of circumstances, a person with Mr. Moran's background, you know, might still persist in doing it and still somewhere hold out the hope that child pornography would be the end result? Do you need any kind of expert opinion or evidence on that? Or maybe you don't. I don't know. I guess I'm just asking you to address that. I don't think so, Your Honor. And certainly that's not a claim that's been raised by Mr. Moran here, that that was a lack in the evidence. They do seek to rely, as you started your question, on the fact that some people, the mothers here, were horrified by the request. They seek to rely on that to tell the jury something about Mr. Moran's intent. And maybe that was a possible connection the jury could have drawn, but it's not the conclusion that they drew. And the ones that they drew were not unreasonable in light of the evidence of intent. And I want to add one more piece of intent, Your Honor, because you mentioned there was nothing specific about Mr. Moran. I actually think there was. And I think that's how he reacted on the day of the search warrant and in his statements during his interview to the FBI. He didn't answer the door to his home. He was profusely sweating. He denied the Emily Lover email address. And then when confronted with the types of messages that were posted by Emily Lover, his response was, I'm not a child molester. I think that was something the jury could rely on to see where his state of mind was when he posted these messages. He was, he himself... Queenie, before you run out of time, can I ask you to switch to the substantial step point? Yes, Your Honor. I've read a lot of these cases under 2251 and its analog under 2422 in the last couple of days. And I can't find any case, any reported case where the actual message itself without more is deemed a substantial step. The cases involve things like grooming over a period of months, offering the child or the parent some sort of enticement, a gift, buying them a gift, buying them a camera, buying them a laptop, making a threat, providing an ultimatum, there's always something more than the message itself. And as the Seventh Circuit explained in Gladish, if you allow the message itself to become the substantial step, you've eliminated substantial step from the analysis. So my concern is with the substantial step element in this case. If you could tell me, first of all, what case is closest to this one on substantial step, and then why you think the evidence here is sufficient. Your Honor, the case I would point to that's the closest is Rothenberg. In Rothenberg, this court found that in the 2422B context, that coaching and encouraging abuse was sufficient to be a attempt to commit that crime. And 2422B and 2251A often overlap as set forth in Lee. And then that's Lee from 2010, not the more recent Lee opinion. But, and in Lee, it goes on to say that what the defendant did there was sought assistance in abusing a child from that child's mother. And the court said that was beyond mere preparation. It wasn't writing in a journal, it wasn't confiding to a friend about sexual interest. It was actually seeking the assistance, the defendant actually sought assistance from the mother to commit the sexual enticement crime. And I think that's exactly what we have here. Mr. Moran goes directly to the mothers who have control over these children, and he asks for their assistance in abusing them. I think what it can't, the way Mr. Moran tries to phrase this and the way that I think that- Can you tell me which, we have a couple of Rothenbergs in this area of law in the circuit. Can you tell me which one, which is the one you think is closest with the citation, please? It is 610 F3, 621 from 2010. And that case is cited in the United States brief. I thought that case, that's why I asked. I thought that that case did not involve any issues concerning the conviction. It involved a sentencing enhancement for pattern, Your Honor. But in the course of doing that, the court considered whether the defendant's conduct supporting that pattern was an attempt to commit 2422B. So it in effect analyzes, evaluates, holds in the context of 2422B that what the defendant did there was an attempt to commit that crime. Okay. Now tell me why you think the evidence here is sufficient. So Your Honor, the evidence here is sufficient because what Mr. Moran did was more than a bare request for child pornography or mere talk. What this court has said is that once something crosses the line into inducement, enticement, those types of things, that's when it becomes an attempt. If I just, you know, Mr. Moran wants to say this would be like standing up in mass and asking for heroin or walking into a mommy and me yoga class and saying, I would like some child pornography, please. But that's not what this was. This was instead of directed, targeted communication that for someone like Mr. Moran, he could believe that a like-minded person might be persuaded, enticed, or induced. He points to the supposed happiness of children who engage in this type of conduct to the mothers. And you mentioned the kind of sometimes there's presents involved. He didn't buy a present, but he did suggest to one of the mothers that he might, that she might buy a sex toy for her daughter's eighth birthday. So there are things that he does that show that he is taking a substantial step towards inducing the mothers to use their children to create child pornography. Which is the one blog mom that that sort of enticement occurred with, if you could. The sex toy post, your honor, it was, I believe that was Miss, that was Miss Spina, whose daughter is her, I'm sorry, one moment. Let me just make sure about that. Yes. And I'm sorry, I said her eighth birthday. I think it was her, I'm sorry for the son. I think it was her seventh birthday. So it's Miss Spina, whose daughter is named A. I believe the site is government exhibit 2A, where you will find that post. That, that was count one, right? Or Miss Spina? Miss Spina was counts one and two. The sex toy post is not a specific count because he did not request an image. He was just sending a sexually charged message. And if I could just have one moment to address the plane error issue. I know it's not huge, but I just want to say the, I think where the, the key point where plane error applies to the substantial step here is in doc 171 at 132, the court summarizes for the defense counsel, precisely what she understands him to be saying. And she mentioned essentially elements one, two, and three, none of which are the substantial step element, which is actually four. And defense counsel agrees with the court that she has correctly understood his argument and characterized it. Then when she goes on to, to explain her reasoning for rejecting the JO, the, the acquittal motion, she, yes, she talks about things that might be relevant to a substantial step analysis, but she's really talking about them in the context of intent. So I do think plane error does apply to that issue. I appreciate the government. Didn't the government understand the argument to also be touching upon substantial step by addressing it? Your honor. I, I think that, no, I don't think that we did. I think that both the government and the court said the word substantial step, but kind of more in the context of summarizing what attempt generally requires, not in terms of responding to an argument that was made about substantial step or the, you know, or the lack thereof. I don't think anyone understood that that was the argument that they were making. These were more general kind of statements of what is required for an attempt to conviction. Thank you very much. Your honors. I appreciate the time. And we ask that you affirm. Thank you very much, Ms. Sweeney. This was, so you've got your rebuttal time. Thank you, your honors, I'm sorry. I'm going to, I'm going to hit you right away. I understand the government to be saying, look, this kind of an issue with sufficiency of the evidence on the production, on the intent to produce this kind of an issue is a, is sort of the quintessential jury issue. You have this evidence. Yes. It's unlikely that a normal person would think that asking for child pornography in these circumstances, but you know, there's other stuff going on here with Mr. Moran. They found, you know, evidence of pedophilia or, you know, some kind of interest in children in his home, et cetera. They watched him throughout the trial. They were able to observe the witnesses who testified about his behavior during the search. And it's really a jury call. Why, why isn't that the case? Your honor. I think, I think actually my colleague touched on it really, whenever she said that, you know, none of us would think that this was likely to happen. And that's exactly right. No one would think this was likely to happen. Can I ask you just, and this is piggybacking on Judge Rosenbaum's question. So you can answer us both simultaneously, but if you wouldn't mind, so kudos to my law clerk who found this case out of Supreme court, because neither of the parties cited it, but this is this case called United States versus U.S. Gypsum. And the court said a person who acts intends the result of his act under two quite different circumstances. One of which is he consciously desires the result, whatever the likelihood of that result happening. So who cares if it's likely the Supreme court seems to think he wanted it. Yes, your honor. So I think, and we, and we didn't cite that case, but we did say Tilton, which I think kind of touches on a similar idea of this purpose and desire. So these, this way, these are two separate elements. So even if the court finds that he did intend for that to happen, a separate element is whether or not there was a substantial step. That's a separate question that the 11th circuit says we actually set aside mens rea and determining whether that occurred. And I'm glad just so judge Rosenbaum gets her question answered. She was really asking you, I think about the mens rea. And so was I, we can get to substantial step, but I mean, before you just give up on that, that I really think is what she was asking you about. Yes, your honor. Absolutely. So, so with mens rea so what is, what is the evidence that we really have of intent here? And it's that it's the literal words, right? It's the words that he wrote on these blogs that, and, and, you know, I guess an interest in, in children, although, you know, even in our, in our criminal justice system, even a thief is entitled to not be wrongfully convicted of being a burglar, right? So that's not kind of a propensity evidence, but with, with you know, the evidence of the literal words, he makes many, many comments on these blogs. He never receives a favorable response. In fact, in one exhibit, the government sites to exhibit 66a below, he actually, the blogger says that they're going to make the blog private because of these comments they don't want to receive anymore. And he responds with, with an emoji and asking them to post a picture of the child's underwear. So while that's horrible, it's clear that, you know, there's no reasonable construction of all those comments that tells you that he was intentionally trying to produce child pornography, that he had that intent. This is really your honors, a classic case of the wrong charge. The jury was given a round peg and only a square hole to put it in if they wanted to hold them accountable, accountable for these comments. And that was attempted production rather than something like cyber stalking, which yes, you know, this does, these comments do seem like they're harassing. They do seem like they would lead to emotional distress. So it's not the case that we're arguing that these comments were okay, or not criminal, or that he had some good intention. That's not the case at all. Instead, we are arguing that there was not an intent to attempt to produce child pornography, nor was there a substantial step, nor did he know or have reason to know that it would be transmitted as a result of his comments. So the reason for those is context. But they're all different. And if even one, you know, wasn't proven below, then then his conviction should be vacated. So for the question about substantial stuff, you mentioned the Seventh Circuit's decision in Gladys, and we were talking about Rothenberg, both of those are 2422. I mean, but they're both enticement to engage in sexual activity cases, right? So, I mean, wouldn't you ordinarily think that a substantial step in so physical a crime would necessarily be sort of greater than one that requires no physical proximity like this? I mean, we wouldn't just equate substantial steps for those two very different crimes, would we? That seems a little crazy. Yes, Your Honor, I think they are analogous. But I think that's exactly right, that it's not a perfect fit. And I think that absolutely a substantial step here could be solely verbal. But I don't think it can be just kind of this one way, one way attempt to post on a public blog, had there been a conversation, you know, had there been any reason to think that this might be responded to favorably, or even, you know, But here, all we have is this attempted post, we don't have any back and forth, we don't have a conversation. And that's why here, even though it is different from 2422, that, you know, it's not enough for a substantial step. And if there are no other questions, thank you. And we ask that you reverse the production convictions. Miss Fussell, thank you very much. Miss Sweeney, thank you very much as well. We'll take the case under advisement.